IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| GRACE KEALOHA and DANIEL ARIAS, JR., | Case No. 19-cv-00274-DKW-KJM |
| Plaintiffs, | **ORDER (1) GRANTING CONVERTED MOTION FOR SUMMARY JUDGMENT, AND (2) DIRECTING ENTRY OF FINAL JUDGMENT IN FAVOR OF DEFENDANTS** |
| vs. | |
| WILLIAM AILA, *et al.*, | |
| Defendants. | |

Defendants, various individuals or entities related to the Department of

Hawaiian Home Lands (DHHL), move for judgment on Plaintiffs' claims of

constitutional violations related to DHHL's attempts to remove Plaintiffs from a

leased Hawaiian homelands residential lot.   Among other arguments, Defendants

do so on the ground that Plaintiffs have no right to occupy the lot in question because

the lease governing the lot was terminated on May 17, 2017, prior to any alleged

transfer of the lease to Plaintiffs or their kin.   The evidence submitted by

Defendants–particularly, the order terminating the lease interest at issue here–

supports Defendants' position.   Moreover, despite having years–both before and

after this case was initiated–to acquire evidence to the contrary, Plaintiffs have

submitted nothing to refute Defendants' assertions.   Therefore, the Court GRANTS

the converted motion for summary judgment, and directs entry of judgment in favor of Defendants on all claims.

## RELEVANT PROCEDURAL BACKGROUND

Plaintiffs, Grace Kealoha and Daniel Arias, Jr., initiated this case on May 31, 2019 with the filing of a pro se Complaint against Defendants, alleging, under 42 U.S.C. Section 1983, that their family home was taken without just compensation and due process in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.   Dkt. No. 1.

On July 24, 2020, Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("motion").   Dkt. No. 45.   A hearing was scheduled on the motion for September 11, 2020, Dkt. No. 46, which, pursuant to Local Rule 7.2, meant that a response was due by August 21, 2020.   Plaintiffs, however, did not respond.   As a result, the Court vacated the scheduled hearing (Dkt. No. 48) and, after reviewing the motion and an exhibit submitted in connection therewith, converted the motion to a motion for summary judgment ("converted motion"), Dkt. No. 52.

In the meantime, after the time for opposing the motion had concluded, Plaintiffs sent numerous communications to the Court.   Dkt. Nos. 49-51, 53, 55-56. Among other things, Plaintiffs informed that they were having difficulty finding an attorney to represent them and difficulty in obtaining documents from DHHL.   Dkt.

No. 49 at 2-3; Dkt. No. 55 at 1-2.   Plaintiffs also stated that "recent evidence" showed the lease at issue here was transferred to Plaintiffs' minor sons.   Dkt. No. 49 at 2; Dkt. No. 55 at 1.

After converting the motion, the Court also extended the time for Plaintiffs to respond thereto until September 25, 2020.   Dkt. No. 52.   Following a further extension of time after Plaintiffs obtained counsel to represent them in this case, Dkt. No. 60, Plaintiffs filed an opposition to the converted motion on October 9, 2020, Dkt. No. 61.   Finally, on October 23, 2020, Defendants filed a reply in support of the converted motion.   Dkt. No. 66.

This Order now follows.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   In particular, the movant's "initial responsibility" is to inform the district court of the basis for its motion and to identify those parts of the record "which it believes demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The moving party is then entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the

burden of proof.   *Id.*   In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party.   *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## DISCUSSION[1]

In the converted motion, Defendants argue that Plaintiffs' claims fail because they hinge on an alleged lease transfer that took place *after* the lease had been terminated by DHHL.   That is an accurate statement, given that, in the Complaint, Plaintiffs allege that the lease in question–held by Jacob Tanner, the brother of Plaintiff Grace Kealoha–was terminated *before* they delivered a transfer-of-lease request to DHHL.   Compl. at p.10, Dkt. No. 1.[2]   Therefore, as alleged in the Complaint, Plaintiffs' claims are subject to dismissal.   *See Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) (stating that a due process claim under Section 1983 requires, among other things, a property interest protected by the Constitution); *Peterson v. U.S. Dep't of Interior*, 899 F.2d 799, 807 (9th Cir. 1990) ("The first step in both due process and taking analyses is to determine whether there is a property right that is protected by the Constitution."); *Bush v. Watson*, 870 P.2d 1272, 1280 (Haw. 1994) (concluding that subleases and transfers of Hawaiian

---

[1]To the extent relevant, the facts established by the evidence in this case are detailed in this Discussion section, rather than separately set forth in a statement of facts.

[2]The Court notes that, in the Complaint, Plaintiffs appear to allege that the lease was cancelled in October 2016, Compl. at 10, whereas the evidence reflects that the lease was cancelled on May 17, 2017 by DHHL.   *See* Dkt. No. 45-2.

homelands leaseholds do "not constitute a property interest" under relevant Hawaiian law).

In their counseled opposition to the converted motion, and in the pro se correspondence sent to the Court, Plaintiffs change their story.   First, in their pro se correspondence, Plaintiffs advance a narrative that, *before* the cancellation of Tanner's lease, the lease was transferred to Plaintiffs' two minor sons.   Dkt. No. 49 at 2.   In doing so, Plaintiffs assert that this alleged transfer constitutes "recent evidence...."   *Id*.   Obviously, however, if a transfer to Plaintiffs' sons had taken place before the cancellation of Tanner's lease in 2017, this could hardly be supported by "recent" evidence, given that Plaintiffs would have been more than aware of the purported transfer when they drafted and filed the Complaint in 2019. In any event, even if a transfer to Plaintiffs' minor sons had been attempted *before* the cancellation of Tanner's lease, it would be irrelevant because Hawai'i law states that a lease transfer can only be made to an individual "who is at least eighteen years old...."   Haw. Admin. R. §10-3-36(a).   Here, Plaintiffs concede that, even now, their children are all minors.   *See* Decl. of Grace Kealoha at ¶ 4, Dkt. No. 62-1 (stating that Plaintiffs' children are "currently" 16, 15, and 11).

Second, in their counseled opposition, Plaintiffs take yet another approach in trying to preserve their claims.   This time, Plaintiffs argue both that Tanner's lease was transferred *before* its cancellation and the lease was transferred to Plaintiffs

themselves (rather than to their sons).   Once again, those assertions are in stark contrast to the ones in the Complaint, where Plaintiffs acknowledged that the attempted lease transfer took place *after* cancellation of Tanner's lease.   Either way, Plaintiffs' current theory is also unsupported by any evidence.   In fact, their theory is contradicted by evidence that Plaintiffs themselves filed.   Notably, when proceeding pro se, Plaintiffs filed various documents in November 2019.   Dkt. No. 36.   One of those documents is a copy of the "Homestead Lease Transfer Request" between Tanner and Plaintiff Daniel Arias, Jr.   Dkt. No. 36-2 at 1-2.   That document clearly shows that the lease transfer request was dated June 1, 2017–*after* the cancellation of Tanner's lease on May 17, 2017.   *Id.*; Dkt. No. 45-2.   Thus, the Court does not give any weight to Plaintiff Kealoha's contradictory statements in her declaration.   *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").[3]

---

[3]Here, of course, it is not opposing parties telling different stories, but *Plaintiffs* telling different stories.   In that regard, ordinarily, the Court gives pro se litigants substantial leeway with respect to such things as construction of allegations and pleading niceties.   The multiple stories Plaintiffs

In addition, in light of the evidence in this case, the Court declines to grant Plaintiffs any additional time to acquire evidence that they believe may support their conflicting stories.   Notably, in their opposition, Plaintiffs assert that they have sought "relevant documents from DHHL as evidenced by the attached correspondence…."   Dkt. No. 61 at 5.   The attached correspondence, however, is a request for documents to support the "successorship documents naming their sons…."   To the extent the story that the lease at issue here was transferred to Plaintiffs' sons is still a story Plaintiffs are sticking with, as discussed above, it is *irrelevant* to preserving their claims.   Further, to the extent Plaintiffs actually seek documents to support the story that the lease was transferred to them *before* it was cancelled in Tanner's name, the evidence already shows that the transfer request

---

have advanced in this case, however, are something far different, as the stories concern facts of which *Plaintiffs* themselves should be more than fully aware and would not require any legal training to know.   Plaintiffs' failure to stick to one story, therefore, is telling.

[4]Plaintiff Kealoha's declaration also makes no logical or legal sense.   Therein, Kealoha states that, after taking possession of the property subject to Tanner's lease in 2014, Plaintiffs "immediately embarked upon the process of applying to DHHL to have the lease transferred from my brother Jacob Tanner to us and filled out all of the forms that were provided to us."   Kealoha Decl. at ¶ 13.   Noticeably absent from this statement (or any other statement) is an indication that *Tanner*, the only person at the time legally capable of transferring his lease to Plaintiffs, was in any way involved in the "process of applying to DHHL…."   Kealoha further states that, in 2016, representatives from DHHL informed her that the lease transfer had been "approved" and, subsequently, after Tanner decided he no longer wished to transfer the lease, DHHL advised that the lease transfer "would still be approved based upon our pending application."   *Id.* at ¶¶ 14, 16. Those statements together make no sense, however, given that, while, in 2016, Plaintiffs' lease transfer request had been approved, *subsequently*, it was still considered pending and "would" be approved.   Put another way, the transfer request could not be simultaneously approved and pending approval.   Further, Kealoha offers no documents to support her bald assertions—no 2014 transfer application, no transfer approval or other related communications from DHHL, and no correspondence from Tanner.

took place *after* the cancellation.   *See* Dkt. No. 36-2.   Moreover, as the Court has

noted already in this case, *see* Dkt. Nos. 54, 57, Plaintiffs have had more than

sufficient time, including in the years between the alleged stories taking place and

the advent of 2020, to obtain the documents they now purportedly seek.   *See McRae*

*v. United States*, 812 F. App'x 505 (Mem.) (9th Cir. July 10, 2020) (stating that a

"lack of diligence in discovery supports denial of request to continue summary

judgment") (citing *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of*

*Fort Peck Reservation*, 323 F.3d 767, 773-774 (9th Cir. 2003)).

Finally, for the same reasons, the Court declines to grant leave to amend the

Complaint because the evidence in this case shows that leave to amend would be

futile.   *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951

(9th Cir. 2006).[5]

## CONCLUSION

For the reasons set forth herein, the motion for judgment on the pleadings,

Dkt. No. 45, converted by the Court to a motion for summary judgment, is

---

[5] The Court also rejects Plaintiffs' procedural arguments for denying the converted motion.   Dkt. No. 61 at 2-3.   First, at the time the motion was filed, Plaintiffs were proceeding pro se. Therefore, there was no obligation for counsel to confer with Plaintiffs pursuant to Local Rule 7.8. *See* Local Rule 7.8 (providing that the "meet and confer" obligation does not apply to "matters in which at least one party is pro se…").   Second, although motions for summary judgment ordinarily must be accompanied by a concise statement of material facts, *see* Local Rule 56.1(a), here, the motion was originally filed as a motion for judgment on the pleadings, which has no such requirement.   Therefore, absent instruction from this Court, Defendants were under no obligation to comply with Local Rule 56.1.

GRANTED.   The Clerk is instructed to enter final judgment in favor of all

Defendants pursuant to this Order.

IT IS SO ORDERED.

DATED: October 30, 2020 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge